UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BERNARD SANFORD,

        Plaintiff,

v.

                                                  Case No. 09-10506
STANDARD FEDERAL BANK, MARSHUN     Honorable Julian Abele Cook, Jr.
BROOKS,

        Defendants.

## ORDER

On February 10, 2009, the *pro se* Plaintiff, Bernard Sanford, filed a complaint in which he accused the Defendants, Standard Federal Bank[1] ("Bank") and the Wayne County Sheriff, Marshun Brooks ("Sheriff Brooks"), of violating his rights under the United States Constitution and 42 U.S.C. § 1983 when they collectively (1) prevented him from accessing funds in his checking account and, thereafter, (2) foreclosed upon his property.

On August 31, 2009, the Bank filed a motion to dismiss to which Sanford has expressed his opposition in a responsive brief. Two weeks later, Sanford filed a motion to vacate orders that he identified as being void pursuant to Fed. R. Civ. P. 60(b)(4)(5) and (6), the merit of which has been challenged by the Bank. On September 18th, Sheriff Brooks filed a dispositive motion which remains unopposed by Sanford as of this date. The Court will address each of these requests below.

---

[1] Standard Federal Bank was formerly known as LaSalle Bank and is now known as Bank of America.

I.

On September 11, 1997, Sanford and his wife obtained a loan from the Bank in the amount of $26,000 for the purchase of a home at 9163 Winthrop Street in Detroit, Michigan. As security for the loan, they extended a mortgage interest in the property to the Bank . When the Sanfords defaulted on their loan, the Bank commenced legal proceedings against them which resulted in a foreclosure sale that was conducted by Sheriff Brooks. During this litigation and subsequent to the sale, Sanford commenced a series of unsuccessful law suits in (1) the United States Bankruptcy Court for the Eastern District of Michigan, (2) the Wayne County Circuit Court of Michigan, (3) the 36th District Court in Detroit, Michigan, and (4) the United States District Court for the Eastern District of Michigan.

However, prior to the disposition of the property at the foreclosure sale, Sanford and his wife filed six bankruptcy petitions with the United States Bankruptcy Court for the Eastern District of Michigan,[2] all of which resulted in the issuance of automatic stays of all other proceedings, including the pending foreclosure sale, and, ultimately, the dismissal of their claims.[3]

---

[2] The bankruptcy cases are:

1.  00-54905, filed October 3, 2000
2.  01-61983, filed November 13, 2001
3.  02-66147, filed November 4, 2002
4.  03-56466, filed June 10, 2003
5.  03-68245, filed October 14, 2003
6.  05-4873-swr, filed February 25, 2005

[3] Sanford appealed the dismissal of the fourth and fifth bankruptcy petitions to the district court. In the opinion which affirmed the dismissal actions by the Bankruptcy Court, the district court opined:

> It is evident that Debtors [Bernard and Cynthia Sanford] cared little about the success of the plans formulated in their various Chapter 13 cases – rather, the aim

In addition to these six bankruptcy cases, Sanford also initiated a lawsuit in the Wayne County Circuit Court of Michigan in August 2001 (Case No. 01-127771-NZ), wherein he advanced claims of (1) fraud-misrepresentation, (2) future promise/bad faith, (3) negligence, (4) violations of the Michigan Consumer Protection Act, and (5) an intentional interference with the work-out plan relationships. In this complaint, he alleged that the Bank had precluded him from withdrawing funds from his checking account which, in turn, prevented him from satisfying his loan obligations. On April 19, 2002, the Circuit Court rejected Sanford's complaint and, thereafter, dismissed the lawsuit with prejudice.

The Bank, after having foreclosed on Sanford's property, commenced an eviction action in the 36th District Court of Michigan (Case No. 04-332880-LT). On November 4, 2004, the 36th District Court entered a judgment of possession in favor of the Bank and thereafter rendered a decision in which it gave Sanford and his wife approximately one month to vacate the property. Approximately six weeks later (December 27, 2004), Sanford initiated legal proceedings in this federal court[4] which was summarily dismissed after the Court concluded that his allegations had "fail[ed] to state a claim and [were] frivolous." Subsequent to (1) entry of the judgment by the

---

was simply to interpose a Chapter 13 filing in the way of each successful scheduled foreclosure sale. Indeed, even on appeal, Debtors do not challenge the dismissal of their cases, but seek only the freedom to make still more such Chapter 13 filings as necessary to forestall foreclosure. However "well-meaning," "desperate," or otherwise understandable such a desire might be, Debtors' actions in filing Chapter 13 cases without hope of successful prosecution in order to obtain the benefit of the automatic stay . . . is an abuse of the bankruptcy process.

*In re Sanford*, E.D. Mich. 03-73556 & 04-70046 (March 8, 2005) (internal citation omitted).

[4] The entitlement of this case is as follows: *Sanford v. Standard Federal Bank, et al.*, E.D. Mich. 04-74794.

36th District Court and (2) the dismissal of his federal action, Sanford began a series of unsuccessful efforts to set aside the judgment of possession that had been entered by 36th District Court. On July 7, 2005, 36th District Court entered an order of eviction.

In May 2005, Sanford initiated a second lawsuit in the Wayne County Circuit Court of Michigan (Case No. 05-515681) against the Bank. Through this litigation, Sanford sought to (1) vacate the sheriff's deed and (2) quiet title to the property. In January 2006, his action was dismissed with prejudice. Sanford's subsequent attempt to appeal the decision of January 2006 was unsuccessful because of his "failure to pursue the case in conformity with the rules."

In February 2009, Sanford commenced the instant action in this federal court, alleging that (1) the Bank had prevented him from accessing the funds in his checking account which, in turn, caused him to default on his mortgage payment obligations and (2) the foreclosure action of the property as well as the sheriff's deed are invalid, relying upon 42 U.S.C. § 1982 and the United States Constitution for support.

II.

In this case, the two Defendants have proffered motions to dismiss based on (1) lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and (2) Sanford's failure to state a claim under Fed. R. Civ. P. 12(b)(6).[5] First, the Court must seek to determine if it possesses jurisdiction

---

[5] These federal rules of procedure provide:

Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required. But a party may assert the following defenses by motion:

(1) lack of subject-matter jurisdiction;
. . .
(6) failure to state a claim upon which relief can be granted[.]

4

to evaluate Sanford's allegations because to engage in a such an analysis is itself an exercise of jurisdiction. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990) (citing *Bell v. Hood*, 327 U.S. 678, 682 (1946)). When reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(1), "the plaintiff bears the burden of proving jurisdiction." *Hollins v. Methodist Healthcare, Inc.*, 474 F.3d 223, 225 (6th Cir. 2007) (citing *Moir*, 895 F.2d at 269). Unlike motions to dismiss under Fed. R. Civ. P.12(b)(6), the Court can make factual findings if and when it becomes necessary to resolve the jurisdictional issue. *Id*.

On the other hand, when reviewing a motion to dismiss, the court must determine if the complaint states "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 (2007). However, these factual allegations must "raise a right to relief above the speculative level." *Id.* at 555. A claim has plausibility when its facts would allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Thus, a complaint must set forth more than a "sheer possibility" that the opposing party's conduct was unlawful. *Id.* However, when an allegation is capable of more than one reasonable inference, it must be viewed in a light that is most favorable to the plaintiff. *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 228-29 (6th Cir. 1997).

It is axiomatic within the Sixth Circuit that a litigant who proceeds without the benefit of an attorney - as in this case - is entitled to a liberal construction of his pleadings and filings. *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999). However, the Court "need not accept as true legal conclusions or unwarranted factual inferences." *Gregory v. Shelby County, Tenn.*, 220 F.3d 433, 446 (6th Cir. 2000) (internal citations omitted).

Moreover, "documents attached to the pleadings become part of the pleading and may be

5

considered on a motion to dismiss." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)). Matters of public record may also be considered by the reviewing court without converting a motion to dismiss into one for a summary judgment. *Id.* at 336. Specifically, "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim." *Weiner, D.P.M. v. Klais and Co.*, 108 F.3d 86, 88 n.3 (6th Cir. 1997); *see also Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008). On the other hand, when affidavits "'do nothing more than verify the complaint,' and when they 'add[] nothing new, but, in effect, reiterate[] the contents of the complaint itself,' they are not truly 'materials . . . outside the pleading.'" *Yeary v. Goodwill Industries-Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997) (citing *Song v. City of Elyria*, 985 F.2d 840, 842 (6th Cir. 1993)). Also, supplemental documents that are attached to the motion to dismiss do not convert the motion into one for a summary judgment if the documents do not "rebut, challenge, or contradict anything in the plaintiff's complaint." *Song,* 985 F.2d at 842 (citing *Watters v. Pelican Int'l, Inc.*, 706 F. Supp. 1452, 1457 n.1 (D. Colo. 1989)).

III.

Both the Bank and Sheriff Brooks argue that the Court is without jurisdiction to preside over Sanford's complaint due to the *Rooker-Feldman* doctrine. Significantly, Sanford did not address this argument in his response to the Bank's dispositive motion.

In 2008, the Sixth Circuit declared that "[t]he *Rooker-Feldman* doctrine is based on the negative inference that, if appellate court review of [] state judgments is vested in the Supreme Court, then it follows that such review may not be had in the lower federal courts." *Lawrence v. Welch*, 531 F.3d 364, 368 (6th Cir. 2008) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,

544 U.S. 280, 283-84 (2005)).  Thus, it restricts federal courts from hearing a case "when granting relief on the federal claim would imply that the state-court judgment on the other issues was incorrect."  *Pieper v. Am. Arbitration Ass'n*, 336 F.3d 458, 460 (6th Cir. 2003) (citing *Catz v. Chalker,* 142 F.3d 279, 293 (6th Cir. 1998)).  "The *Rooker-Feldman* doctrine, however, does not bar jurisdiction when the plaintiff's claim is merely 'a general challenge to the constitutionality of the state law applied in the state action,' rather than a challenge to the law's application in a particular case.'" *Id.*  (citing *Tropf v. Fidelity Nat'l Title Ins. Co.*, 289 F.3d 929, 937 (6th Cir. 2002)).  The Sixth Circuit has interpreted this doctrine as divesting federal district courts of jurisdiction only when "a plaintiff complains of injury from the state court judgment itself." *Coles v. Granville*, 448 F.3d 853, 858 (6th Cir. 2006).

Here, Sanford seeks "an order vacating the deed from the [Wayne County] Sheriff Marshun Brooks to Standard Federal Bank dated February 11, 2004."  However, inasmuch as various state tribunals have already (1) considered Sanford's numerous arguments regarding the validity of the deed and the transfer of property to the Bank and (2) entered judgment in favor of the Bank, this Court does not have the authority to grant Sanford the relief that he seeks to obtain.  If the Court does entertain his arguments, it would be, in effect, conducting an impermissible review of a state court action and acting as an appellate court.  Therefore, the Court must, pursuant to the *Rooker-Feldman* doctrine, dismiss this action for lack of subject matter jurisdiction.

IV.

Even if the Court did have jurisdiction to consider Sanford's allegations, they are substantively deficient as to both Defendants.  First, with respect to Sheriff Brooks, Sanford has failed to level any legally cognizable factual allegations against him.  While the Court surmises that

7

Sheriff Brooks has been listed as a Defendant because (1) he presided over the foreclosure sale, and (2) his name appears on the deed, Sanford has failed to advance any facts that would constitute an inference of wrongdoing - much less unlawful conduct of unconstitutional proportions. *See Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005) ("[A] complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.") As such, Sanford's complaint against Brooks must be dismissed.

Sanford's claims against the Bank are also deficient. In his complaint, Sanford has advanced a claim under 42 U.S.C. § 1983, which states the following, in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

The Sixth Circuit Court of Appeals has held that in order to maintain an action under this statute, a plaintiff must show that the defendant is a state actor. *See Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000). "[A] private entity can be held to constitutional standards when its actions so approximate state action that they may be fairly attributed to the state." *Id.* As noted by the Bank, the Sixth Circuit has announced that there are three tests to determine if the actions of a private entity constitute state action; namely

> [1] The public function test requires that the private entity exercise powers which are traditionally exclusively reserved to the state. The typical examples are running elections or eminent domain. [2] The state compulsion test requires proof that the state significantly encouraged or somehow coerced the private party, either overtly or covertly, to take a particular action so that the choice is really that of the state. [3] Finally, the nexus test requires a sufficiently close relationship (i.e., through state regulation or contract) between the state and the private actor so that the action taken may be attributed to the state.

*Ellison v. Garbarino*, 48 F.3d 192, 195 (6th Cir. 1995) (internal citations omitted).

Although Sanford asserts in his pleading that the Bank "was acting under the color of state law," he has failed to make any factual allegations to establish this claim. Furthermore, Sanford complains that the Bank prevented him from withdrawing funds from his checking account. However, there is nothing within his complaint which suggests that the actions by the Bank approximated those of the state government. An examination of Sanford's complaint does not create any justifiable inference that the Bank (1) exercised a power which is traditionally within the province of the state, (2) was encouraged to act by the state, or (3) had a sufficiently close relationship with the state. Thus, inasmuch as the Court need not accept bare legal conclusions, *see Gregory*, 220 F.3d at 446, Sanford's complaint against the Bank will be dismissed with prejudice.

Inasmuch as the above-referenced arguments by the Defendants have resolved the controverted issues in this action, the Court need not consider the alternative arguments in their respective briefs.

V.

Sanford's motion to vacate, in light of the above discussion by the Court, is now moot. However, even if the Court did consider his request, it is without merit. Sanford is once again urging the Court – as he did in his complaint – to overturn valid state court judgments, which this Court has declined to do pursuant to the *Rooker-Feldman* doctrine. *See Pieper*, 336 F.3d at 460. As such, his motion to vacate is denied.

VI.

Accordingly and for the reasons that have been set forth above, the Court must, and does, (1) dismiss Sanford's complaint with prejudice and (2) deny his motion to vacate.

9

IT IS SO ORDERED.

Dated:  December 15, 2009              S/Julian Abele Cook, Jr.
       Detroit, Michigan                JULIAN ABELE COOK, JR.
                                                United States District Court Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participant Bernard Sanford, 20222 Greenlawn, Detroit, MI 48221 on December 15, 2009.

                                                                                      s/ Kay Doaks
                                                                                      Case Manager